1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7   CENTER FOR ENVIRONMENTAL
    HEALTH, et al.,                          Case No.  21-cv-01535-PJH
8
                 Plaintiffs,
9                                            **ORDER GRANTING DEFENDANTS'**
        v.                                   **MOTION TO TRANSFER VENUE**
10
    ENVIRONMENTAL PROTECTION                 Re: Dkt. No. 33
11  AGENCY, et al.,
12               Defendants.
13
14
15        Before the court is defendants' motion to transfer venue.  The matter is fully

16  briefed and suitable for decision without oral argument.  Accordingly, the hearing set for

17  May 5, 2022, was previously vacated.  Having read the parties' papers and carefully

18  considered their arguments and the relevant legal authority, and good cause appearing,

19  the court hereby rules as follows.

20                              **BACKGROUND**

21        This Toxic Substances Control Act ("TSCA") case concerns testing related to

22  alleged chemical exposures in North Carolina.  Specifically, plaintiffs petitioned the

23  United States Environmental Protection Agency ("EPA") to initiate a rulemaking

24  proceeding or issue an order compelling health and environmental-effects testing

25  regarding chemical substances allegedly released into the Cape Fear River watershed.

26  This lawsuit challenges EPA's administrative responses to the petition.

27        Plaintiff Center for Environmental Health ("CEH") is a non-profit organization

28  working to protect children and families from harmful chemicals in air, food, water, and in

United States District Court
Northern District of California

United States District Court
Northern District of California

1  everyday products.  FAC (Dkt. 32) ¶ 15.  CEH is headquartered in Oakland, California,

2  but members of its staff work in North Carolina.  Plaintiff Cape Fear River Watch

3  ("CFRW") is a grassroots environmental nonprofit based in Wilmington, North Carolina,

4  and its mission is to protect and improve the water quality of the Cape Fear River Basin

5  for all people through education, advocacy, and action.  FAC ¶ 16.  Plaintiff Clean Cape

6  Fear ("CCF") is an all-volunteer, grassroots community group based in the Wilmington

7  area.  FAC ¶ 17.  Plaintiff Democracy Green ("DG") is an organization created and run by

8  native North Carolinians-of-color to address the systemic impacts burdening

9  disenfranchised communities across North Carolina.  FAC ¶ 18.  Plaintiff The NC Black

10 Alliance ("NCBA") is a group working toward state-level systemic change by

11 strengthening the network of elected officials representing communities of color

12 throughout the state of North Carolina and collaborating with progressive, grassroots

13 networks on intersecting issues.  FAC ¶ 19.  Plaintiff Toxic Free NC ("TFNC") is an

14 organization advancing environmental health and justice in North Carolina by advocating

15 for safe alternatives to harmful pesticides and chemicals.  FAC ¶ 20.  Defendants are the

16 EPA and Michael Regan, who is named in his official capacity as Administrator of EPA.

17 FAC ¶¶ 21, 22.  Regan was substituted for Jane Nishida, previous Administrator of EPA,

18 pursuant to FRCP 25(d).  Dkt. 15.

19      EPA and other leading authorities consider per- and polyfluoroalkyl substances

20 ("PFAS"), a class of chemicals, a serious threat to human health and the environment but

21 recognize that, while some high-profile PFAS have been shown to have harmful effects,

22 very few substances in the class have been tested to determine their impacts on exposed

23 people and wildlife.  Section 4 of the Toxic Substances Control Act ("TSCA") gives EPA

24 authority to require PFAS manufacturers to fund this testing.  15 U.S.C. § 2603(a)(1).

25      In October 2020, plaintiffs petitioned EPA to initiate a rulemaking proceeding or

26 issue an order under TSCA section 4(a)(1)(A)(i) to compel The Chemours Company

27 ("Chemours") to fund and carry out health and environmental-effects testing on 54 PFAS

28 that, plaintiffs allege, are manufactured by Chemours at its chemical production facility in

2

1    Fayetteville, North Carolina, and discharged from the facility into the Cape Fear River.

2    FAC ¶¶ 1-2, 7.  Plaintiffs' requested testing would include studies of downstream

3    communities in North Carolina that, they allege, were exposed to PFAS-contaminated

4    drinking water.  FAC ¶ 60.  Plaintiffs also proposed that EPA ask the National Academy

5    of Sciences to create an independent science panel to oversee the testing program.  FAC

6    ¶ 61.

7         In January 2021, EPA denied the petition because, among other issues, "the

8    petitioners have not provided the facts necessary for the Agency to determine for each of

9    the 54 PFAS that existing information and experience are insufficient and testing of such

10    substance or mixture with respect to such effects is necessary to develop such

11    information."  FAC ¶ 64.

12         In March 2021, plaintiffs initiated this lawsuit seeking judicial review of the January

13    2021 denial and requested that EPA reconsider its decision to deny the administrative

14    petition.  FAC ¶¶ 4-5.  EPA granted plaintiffs' reconsideration request, and, upon

15    stipulation of the parties, the court placed this case in abeyance while EPA completed its

16    reconsideration action.  Dkt. 25.

17         On December 28, 2021, after reconsidering the agency's prior January 2021

18    denial, EPA granted the administrative petition and communicated the decision in a letter

19    to counsel for plaintiffs.  FAC ¶ 79.  EPA's December 2021 grant of the petition was too

20    narrow to satisfy plaintiffs, however, requiring testing of only seven of the 54 substances

21    proposed in the petition.  Plaintiffs then filed the now-operative amended complaint,

22    seeking judicial review of both EPA's January 2021 denial and EPA's December 2021

23    grant of the petition.  FAC ¶ 9.  The FAC asserts one claim under TSCA section 21.  FAC

24    ¶¶ 121-31.  Plaintiffs seek declaratory relief, an order directing EPA to initiate a

25    proceeding for the issuance of a rule or order under TSCA section 4 requiring Chemours

26    to conduct the studies requested in the petition, and an award of costs.  FAC at 31-32.

27         In the instant motion, defendants ask the court for a discretionary transfer to the

28    Eastern District of North Carolina, home to the Cape Fear River watershed and most of

United States District Court
Northern District of California

1  the plaintiffs.  Plaintiffs resist transfer on the basis that one of the plaintiff organizations

2  maintains a headquarters in Oakland in addition to its office in North Carolina.  If the court

3  grants transfer, plaintiffs ask that the matter be transferred to the District of Columbia,

4  home of the defendant agency's headquarters.

**DISCUSSION**

5

6  **A.    Legal Standard**

7       A motion for discretionary transfer of venue from one district to another is

8  governed by Title 28 U.S.C. § 1404(a), which states: "For the convenience of parties and

9  witnesses, in the interest of justice, a district court may transfer any civil action to any

10  other district or division where it might have been brought."  In contrast to motions

11  challenging venue as improper, the party seeking discretionary transfer generally bears

12  the burden of showing that transfer is appropriate.  Jones v. GNC Franchising, Inc., 211

13  F.3d 495, 499 (9th Cir. 2000) (noting the moving party failed to meet its burden of

14  showing the alternate forum "was the more appropriate forum for the action").

15       Under the plain text of the statute, the moving party must make two showings to

16  justify transfer.  First, the transferee forum must be one in which the case "might have

17  been brought."  Hoffman v. Blaski, 363 U.S. 335, 344 (1960).  "In determining whether an

18  action 'might have been brought' in a district, the court looks to whether the action initially

19  could have been commenced in that district."  Hatch v. Reliance Ins. Co., 758 F.2d 409,

20  414 (9th Cir. 1985).

21       Second, provided the case could have been brought in the proposed transferee

22  forum, the movant must persuade the court that considerations of "convenience of parties

23  and witnesses" and "the interest of justice" weigh in favor of transfer.  Earth Island Inst. v.

24  Quinn, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014).  The Ninth Circuit has identified the

25  following specific but non-exhaustive factors which "the court may consider" in analyzing

26  those overarching statutory considerations:

27                    (1) the location where the relevant agreements were negotiated
                    and executed, (2) the state that is most familiar with the
28                    governing law, (3) the plaintiff's choice of forum, (4) the

4

respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof . . . [9] the presence of a forum selection clause . . . [and 10] the relevant public policy of the forum state, if any."

Jones, 211 F.3d at 498-99.

A district court is not restricted to the pleadings on a motion to transfer and may consider "undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." FastCap, LLC v. Snake River Tool Co., LLC, No. 15-CV-02764-JSC, 2015 WL 6828196, at *2 (N.D. Cal. Nov. 6, 2015). Section 1404(a) affords the court broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Jones, 211 F.3d at 498 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

**B.    Analysis**

The two steps in the § 1404(a) assessment, determining (1) whether the case could have been brought elsewhere and (2) whether transfer to another district would serve the convenience of the parties and witnesses as well as the interest of justice, are considered in turn.

**1.    Section 1391(e)**

"In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district." Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). In civil actions against the United States or its agencies or officers, venue is proper in any judicial district where (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) a "plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Defendants argue that this case could have been brought in the Eastern District of North Carolina for two reasons. First, at least two of the plaintiff entities are based in the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Wilmington area, which falls within that district's boundaries.  Plaintiff Cape Fear River

2   Watch is based in Wilmington, and plaintiff Clean Cape Fear is based in the Wilmington

3   area, and all but one of the remaining plaintiffs is similarly based in North Carolina.  FAC

4   ¶¶ 16-20.  Second, a substantial part of the events giving rise to plaintiffs' claim under the

5   TSCA occurred in the Eastern District of North Carolina.  Plaintiffs seek a rule or order

6   compelling a facility in Fayetteville, North Carolina, to conduct testing concerning

7   chemical substances allegedly discharged into the Cape Fear River watershed, which is

8   substantially located within the jurisdiction of the Eastern District of North Carolina.  FAC

9   ¶¶ 55, 57.  Further, the alleged harm was suffered by North Carolina residents and

10  wildlife in the Cape Fear River watershed.  FAC ¶¶ 59-60, 62.  Venue in the Eastern

11  District of North Carolina would have been proper for both these reasons.

12          **2.     Convenience**

13          Here, the parties' arguments center on the weight the court should place on each

14  (a) plaintiffs' choice of forum, (b) the court most familiar with the administrative law at

15  issue, (c) ease of access to evidence, including the potential for evidence from outside

16  the administrative record, and (d) the contacts related to plaintiffs' cause of action in this

17  forum.

18                  **a.     Plaintiffs' Choice of Forum**

19          Generally, the court gives "great weight" to a plaintiff's choice of forum, especially

20  when there are strong contacts between the chosen forum and the dispute.  See Lou v.

21  Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).  However, "[i]f the operative facts have not

22  occurred within the forum and the forum has no interest in the parties or subject matter,

23  [the plaintiffs'] choice is entitled to only minimal consideration."  Lou, 834 F.2d at 739

24  (citing Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)).

25  Furthermore, "[i]f there is any indication that plaintiff's choice of forum is the result of

26  forum shopping, plaintiff's choice will be accorded little deference."  Williams v. Bowman,

27  157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

28

6

Here, plaintiffs' sole cause of action is completely disconnected from the Northern District of California.  The operative facts of the case arise from plaintiffs' petition seeking testing of environmental impacts in the Cape Fear River Basin, within the geographic boundaries of the Eastern District of North Carolina.  The underlying chemical substance exposures and the effects of any required testing will be felt by communities in North Carolina.  In contrast, none of the operative facts giving rise to plaintiffs' cause of action took place here.  Plaintiffs do not allege that any of EPA's consideration of their petition seeking the testing took place in California.  The only connection between the case and this forum is the Oakland office of one of the several North-Carolina-based plaintiff entities.  Though plaintiffs appear to have satisfied the barest of § 1391(e)'s venue requirements based on the Oakland office of CEH, their choice of forum is entitled to little deference.

### b.    Court Familiarity with TSCA

Plaintiffs suggest that this district is particularly experienced with the applicable law under the TSCA based on two cases considered by Judge Chen.  See Food & Water Watch, Inc. v. United States Env't Prot. Agency, 291 F. Supp. 3d 1033 (N.D. Cal. 2017); Asbestos Disease Awareness Org. v. Wheeler, 508 F. Supp. 3d 707 (N.D. Cal. 2020).  However, plaintiffs do not identify any complex issues in this action or unique mechanisms inherent to this court that would suggest that the case is more suitable for this court to handle over a federal court in another state.  Plaintiffs' single claim does not arise from California law or any other substantive law that would make this district more suited to consider this administrative law case.  Plaintiff offers no Ninth Circuit authority providing guidance to interpret and apply the TSCA.  Rather, the TSCA is a federal law of wide applicability, for which the judges of the Eastern District of North Carolina are similarly and aptly qualified to apply.  Whether the case remains here or is transferred, the presiding court would likely consider Judge Chen's cases in the same way—for their persuasive authority.  No judicial economy would be gained by litigating here.  Therefore, this factor does not weigh against transfer.

7

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.      Ease of Access to Witnesses and Evidence

With respect to convenience of the witnesses, "[t]he relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under section 1404(a)." Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (citation omitted).  "Importantly, '[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor.'" Id. (alteration in original) (quoting Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co., 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  "In determining whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and location of each, but, rather, the court must consider the importance of the witnesses." Saleh, 361 F. Supp. 2d at 1160-61 (citations omitted).  In establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance.  Carolina Cas. Co. v. Data Broad. Corp., 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001) (citation omitted).

Though the parties dispute the importance of this convenience factor, there exists little dispute regarding documentary evidence.  See Byler v. Deluxe Corp., 222 F. Supp. 3d 885, 906-07 (S.D. Cal. 2016) ("Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because "advances in technology have made it easy for documents to be transferred to different locations." (citation and quotation marks omitted)).  Instead, defendants declare their intent to depose plaintiffs and potentially their members related to the groups' standing, including depositions of members located in North Carolina.  Plaintiffs unconvincingly suggest that defendants' depositions regarding standing can take place in North Carolina even if the case is being heard in this district.  The convenience of those member witnesses weighs slightly in favor of transfer.

Additionally, though this case seeks review of an administrative decision, defendants contend that there will likely be a dispute regarding introduction of evidence beyond the administrative record as there has been in similar TSCA cases.  See, e.g.,

United States District Court
Northern District of California

1   Food & Water Watch, Inc., 302 F. Supp. 3d at 1061.  And if the court considers evidence
2   outside of the administrative record, witnesses and evidence based in North Carolina
3   become more relevant, including potential witnesses from the Chemours facility.
4   Plaintiffs aver that this argument from defendants amounts to a bait-and-switch—EPA
5   here seeks transfer of the case based on extra-record testimony, but once in North
6   Carolina, EPA will resist introduction of such testimony.  In response, defendants
7   highlight that plaintiffs themselves plan to introduce extra-record evidence in the form of
8   expert scrutiny of EPA's determinations.

9           Here, the court abstains from assessing whether extra-record evidence will be
10  considered.  Rather, the court to decide the case should make its own determination of
11  that issue after the pleading stage.  The potential need for discovery into the North
12  Carolina plaintiffs' standing is sufficient to tip this factor in favor of transfer.  Defendants
13  identify two potential non-party witnesses in North Carolina, both employees of
14  Chemours, whose residency weighs even greater in favor of transfer.  See Dkt. 33-1 at 3.
15  Plaintiffs' arguments regarding the potential scope of discovery betray the likelihood of
16  discovery disputes and the potential difficulty in attempting to litigate this case so far from
17  the location giving rise to their original petition.  Should discovery disputes ensue, this
18  court lacks authority to compel attendance of unwilling non-party witnesses thousands of
19  miles away.  Therefore, the ease of access to witnesses weighs in favor of transferring
20  the case to the Eastern District of North Carolina.

21          d.      Contacts Related to Plaintiffs' Cause of Action in this Forum
22                  and Local Interest in the Controversy

23          The operative complaint contains several allegations regarding PFAS
24  contamination in the Cape Fear River watershed.  FAC ¶¶ 47-54.  Plaintiffs request
25  specific health and environmental testing regarding chemical substances allegedly
26  released into that watershed by the Chemours facility in Fayetteville, North Carolina.
27  FAC ¶¶ 55-61.  Plaintiffs seek studies on three specific PFAS mixtures that are
28  "representative" of the exposures in the Cape Fear River watershed.  FAC ¶ 60.  All of

United States District Court
Northern District of California

1  these allegations make clear that the center of gravity of the case is in the Eastern

2  District of North Carolina.  The Eastern District of North Carolina has a strong local

3  interest in having this controversy decided at home.  <u>Animal Legal Def. Fund v. U.S.</u>

4  <u>Dep't of Agric.</u>, No. CV 12-4407-SC, 2013 WL 120185, at *4 (N.D. Cal. Jan. 8, 2013)

5  ("[C]ases that impact the environment or groups of animals have more compelling

6  reasons for being heard in the forum having the closest local interest or connection to the

7  activities alleged in the complaint, since those communities will be most affected by those

8  cases' resolutions.").

9        In their opposition papers, plaintiffs pivot to argue that the outcome of this case

10  could have "national and California implications" because residents of this district might

11  be exposed to PFAS and thus have an interest in "whether EPA will use its TSCA

12  authorities to require manufacturers to develop information on the risks of PFAS."  Dkt.

13  35 at 27-28.  But plaintiffs do not show that residents of this district are exposed to the

14  same 54 PFAS underlying their request for testing in the Cape Fear River watershed.

15  Plaintiffs' generalized argument stretches so far as to imply that any district court could

16  host this case given the seeming ubiquity of PFAS.  The potential national implications of

17  the case to not establish a local interest in the controversy.  Plaintiffs' cause of action is

18  plainly unrelated to their contacts in this forum.  Therefore, the minor connection between

19  plaintiffs' cause of action and this forum as well as the lack of a local interest in the

20  controversy weigh in favor of transferring the case to the Eastern District of North

21  Carolina.

22              **e.      Weighing the Factors**

23        Weighing all the factors, including (a) plaintiffs' choice of forum, (b) the court most

24  familiar with the administrative law at issue, (c) ease of access to evidence, including the

25  potential for evidence from outside the administrative record, and (d) the contacts related

26  to plaintiffs' cause of action in this forum, the court must grant defendants' request to

27  transfer this case.  The local interest in having this environmental dispute decided at

28  home, the convenience of the witnesses, and the interests of justice all favor transferring

this action to the Eastern District of North Carolina.  This forum has little interest in this case, and plaintiffs' choice to bring it here appears to be the product of blatant forum shopping.  Plaintiffs' alternative request for the case to be transferred to the District of Columbia appears to be a product of the same forum shopping, and it is denied.

## CONCLUSION

For the reasons stated above, the court GRANTS defendants' motion to transfer venue to the Eastern District of North Carolina.

**IT IS SO ORDERED.**

Dated: May 9, 2022

_/s/ Phyllis J. Hamilton_ _____
PHYLLIS J. HAMILTON
United States District Judge